ITASCA LUMBER COMPANY v. HANK GALE.[1]

Nov. 5, 1895.

Nos. 9418—(46).

**Minor Assignments.**

Several unimportant assignments of error disposed of.

**Driving Logs—Scale Bill as Evidence.**

Where, in an action to recover a balance alleged to be due as compensation for driving logs to the limits of a certain boom company, as a defense it is averred that the contract was not fulfilled, and that a specified number of the logs were not driven to their destination, a scale bill from the office of the surveyor general of logs and lumber, showing the number of logs and the number of feet contained therein, scaled at a point 150 miles down the driving stream from the agreed destination, is not competent evidence of a failure to perform the contract according to its terms.

**Verdict Sustained.**

The evidence in this case considered, and *held* to have justified the trial court in directing a verdict for the plaintiff for the amount claimed, less a sum admitted to have been paid, and the amount of a counterclaim set forth in the answer, and really admitted on the trial.

Action in the district court for Itasca county to recover $328.46, less a payment of $34.27, with interest, for driving 328,460 feet of pine

[1] Reported in 64 N. W. 916.

logs at one dollar per M., under a contract dated April 7, 1891.   The
answer admitted the contract and the delivery of the logs to plaintiff,
but denied that plaintiff drove more than 172,000 feet of the logs, and
alleged that 155,460 feet of the same remained undriven and unac-
counted for.   By way of counterclaim, defendant alleged that plain-
tiff and defendant entered into another contract dated April 16, 1890,
for driving other logs, under which plaintiff received and agreed to
drive 355,730 feet of pine logs at one dollar per M., of which 40,730
remained undriven and unaccounted for; that no settlement had been
made under either contract; that upon both contracts defendant had
paid $300 at one time and $100 at another time; that said 155,460
feet were of the reasonable value of $4.90 per M., and said 40,730 feet
were of the reasonable value of $4.50 per M.   The answer further
set up a counterclaim of $122.95 for the stabling and agistment of
animals and for other items, and demanded judgment for $979.70 and
interest.   The reply admitted the contract of April 16, 1890, alleged
performance, settlement and payment of the same in full, and denied
the other allegations of the answer.   The court, Holland, J., directed
a verdict in favor of plaintiff for the amount claimed, and less what-
ever sum the jury might find due upon the counterclaim for $122.95.
The jury rendered a verdict in favor of plaintiff for $169.24.   From an
order denying a motion for a new trial defendant appealed.   Af-
firmed.

The assignments of error referred to in the first paragraph of the
opinion were that the court erred:   (2) In not sustaining appellant's
objection to the following question to the witness Lacroix: 'When
you speak of taking all the logs across the lakes and of taking a clean
drive through the stream down into the Mississippi, you mean that
you took them all with the exception of those that escaped in that
manner?'.   (3) In sustaining plaintiff's objection to the following
question:   'I will ask you, Mr. Sims, if it is not a fact that in this same
year you had a contract with Dennis & Howard, whereby you gave
them ten cents a piece for booming up logs that they could pick up in
Trout Lake and Waubanna Lake, above your dam at the foot of Wau-
banna Lake, you had a contract with them for picking up logs, that
had been lost previous to that time?'   (4) In sustaining plaintiff's ob-
jection to the following question:   'Isn't it a fact that they picked up
for your Co. 1,592 logs under a contract of ten cents each, and that

those logs came out of the drive that these Gale logs were in largely?"
(5) In sustaining plaintiff's objection to the receipt in evidence of the
certified copy of the records of the surveyor general of the second tim-
ber district of Minnesota. G. S. 1894, §§ 2400, 5733.

*T. M. Brady,* for appellant.

*Choate & Merrill,* for respondent.

COLLINS, J. There is no merit in appellant's specifications of
error from the second to the fifth, inclusive. The question put to
the witness Lacroix, and objected to by appellant's counsel, simply
called for an explanation of what the witness meant when he testi-
fied as to taking all of the logs across the lake, and taking a clean
drive to the Mississippi river. That asked the witness Sims by ap-
pellant's counsel, an objection being made and an answer excluded,
was not proper cross-examination. Nor do we see that it was mate-
rial as the evidence then stood. And these remarks can be properly
applied to the question which immediately followed, the ruling of
the court excluding an answer being challenged by the fourth speci-
fication of error.

The fifth specification is that the court erred in sustaining an ob-
jection to the introduction in evidence by appellant (defendant) of a
certified copy of certain records from the office of the surveyor gen-
eral of logs and lumber at Minneapolis, Minnesota. This was a copy
of a scale bill showing the number of logs, and the number of feet
thereof, scaled by the surveyor general or his deputies, between July
31 and November 14, 1890, and also during the year ending July
31, 1892, bearing defendant's marks. Although there was nothing
in the copy or the certificate to indicate where the logs mentioned
were scaled, it stands undisputed that it was at the Minneapolis boom,
over 150 miles down the river from the point to which plaintiff agreed
and contracted to drive the logs for defendant. Certainly it could
not be shown that plaintiff had failed to perform its contract to drive
defendant's logs to the boom company's limits, which in 1891 were at
Brainerd, Minnesota, or that it had converted any part of the logs
to its own use, by proof as to the number of feet scaled out after they
had been driven 150 additional miles by another contractor. This
evidence did not tend to establish appellant's claim that a large per-
centage of the logs were never driven to the boom company's limits

at Brainerd, and the objection to its reception was properly sustained.

We now come to the consideration of the alleged error in the charge of the court, which, briefly stated, was that the verdict must be for the amount claimed by plaintiff, less a payment of $34.27, and less such amount as might be found due from the latter to defendant upon one of the counterclaims, about which there was really no dispute on the trial, and the verdict was in accordance with this instruction.

On the issues as framed by the pleadings it was incumbent on the plaintiff to show prima facie at the trial that it had substantially complied with the terms of its 1891 contract by running and driving defendant's logs into and within the limits of the boom company on the Mississippi river. If this was done, it devolved upon defendant to meet and overcome the case thus made out by proof that part of the logs had not been run and driven; and, if defendant wished to establish either of his counterclaims predicated upon the two contracts,— the one last mentioned and one of the same character made between these parties in 1890,—to prove that plaintiff had converted the logs alleged to be missing, or some part thereof, to its own use, and to show their value. And if defendant had paid more than $34.27 on the 1891 contract, the burden was on him to establish the fact by competent evidence.

At the trial the plaintiff's witnesses, several in number, testified that they were at work on the drive in the spring of 1891; that they received from defendant, at Trout Lake, the logs mentioned in the contract, boomed as agreed upon; then moved and drove them through the various lakes and streams between that point and the Mississippi river, with other logs, as is the custom, and from thence to the point of delivery, the boom limits at Brainerd, where they were delivered to the boom company. They also testified that a clean drive was made, and that all of the work of moving, running, and driving the logs was done in a careful, prudent, and the usual manner. No witness undertook to say that all of the logs reached their destination, and that none were lost; but all agreed that, except as to those which escaped from the booms while in transit across the lakes by either going over or under the boom sticks (and it was agreed in the contract that plaintiff should not be obliged to recover these), substantially all which did not sink of their own weight through no fault of the men engaged upon the work were delivered in accordance with the terms

of the contract. This evidence was quite in detail, and clear and explicit that what is called a "clean drive" was made. The defendant made no effort to meet this evidence or to overcome the proofs as to a substantial compliance with the terms of the contract, except by an offer to introduce the Minneapolis scale bill, before mentioned, and by his own testimony that only 172,000 feet of logs had been accounted for; and on cross-examination he frankly admitted that this statement was wholly based on what the scale bill disclosed, not from any other or actual knowledge possessed by him. And he undertook to establish his counterclaim for the conversion of the logs driven under the 1890 contract by the same class of evidence. He knew nothing personally about the driving of the logs, or as to the manner in which plaintiff performed either of the contracts, and he only claimed to know that there had been a neglect and failure because there was, according to the scale bill, a shortage at Minneapolis. On this state of the evidence there was nothing for the jury to pass upon respecting the performance of the contract sued upon, the counterclaim based on the alleged conversion of the logs, or on the contract made in 1890; and on this issue the verdict could not have been otherwise than as held by the court, because of the conclusive character of plaintiff's proofs.

In the complaint plaintiff admitted a payment on the contract sued upon of $34.27, as before stated, while defendant alleged in his answer a payment of $400 on both contracts,—$300 at one time and $100 at another, both prior to September 1, 1891. It appeared upon the trial that the first payment of $300 was credited upon the amount due on the 1890 contract, and that when the second payment of $100 was received by plaintiff that account was balanced in full, and the residue, $34.27, credited as a payment on the 1891 contract. This the plaintiff had a right to do, unless, when paid, defendant directed a different application of the sums paid by him; and there was no attempt made upon the trial to show that he ever directed an application of either payment, or any part thereof. This disposes of the claim that the court erred when directing a verdict for plaintiff.

There is nothing in the affidavits presented on the motion for a new trial which would have warranted the court in granting the motion on the ground of newly-discovered evidence.

Order affirmed.

CANTY, J. (dissenting).   I cannot concur in the foregoing opinion so far as it holds that the evidence is conclusive that plaintiff delivered at the termination of his part of the drive all the logs with which he started, and have some doubt whether even the jury would from the evidence be justified in finding that he did.   In my opinion, a new trial should be granted for the error in the charge of the court.